**Firm e-mail address:  walkerassistant@aol.com**

William G. Walker, Esq.
WILLIAM G. WALKER, P.C.
177 N. Church Avenue, Suite 807
Tucson, AZ 85701
wgwpc@aol.com
Telephone: (520) 622-3330
SBN:  005361

Leigh H. Bernstein
382 S. Convent Ave.
Tucson, AZ 85701
(520) 623-3038
AZ Bar No. 016123
Pima Computer No. 65054
Az Fid No. 20544
leigh@barriolaw.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Marvin Isaac Wyler, Jr., and Twila Carstens,** | No. |
| **Plaintiffs,** | **COMPLAINT** |
| **Vs.** | **(JURY TRIAL REQUESTED)** |
| **TOWN OF COLORADO CITY, an Arizona municipality, CITY OF HILDALE, a Utah municipality, CORPORATION OF THE PRESIDING BISHOP OF THE FUNDAMENTALIST CHURCH OF LATTER DAY SAINTS, a Utah Corporation, KENNETH BRENDEL, in his official capacity, and HYRUM ROUNDY, in his official capacity,** | |
| **Defendants.** | |

1

## INTRODUCTION

This case is a civil rights action which is brought by Plaintiffs pursuant to 42 U.S.C. §§1983 and 1985 and provisions of the United States Constitution. Its purpose is to remedy defendants' discriminatory and unlawful actions against plaintiffs for illegal arrest, excessive force, unlawful police practices and discrimination in denying Plaintiffs essential city services.

Defendant CORPORATION OF THE PRESIDING BISHOP OF THE FUNDAMENTALIST CHURCH OF LATTER DAY SAINTS is sued, along with other defendants, pursuant to 42 U.S.C. §§1983 and 1985 for conspiracy to commit the substantive violations alleged hereunder with other defendants.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

2.      This Court is an appropriate venue for this case pursuant to 28 U.S.C. §1391(b)(2). The actions complained of took place, in part, in this judicial district; evidence and records relevant to the allegations are maintained in this judicial district; individual defendants were illegally detained, illegally harassed and intimidated and discriminated against otherwise in this district.

## PARTIES

3.      **Plaintiff *MARVIN ISAAC WYLER, JR.*** is a single man who has resided, at all times relevant hereto, in Colorado City, Arizona.

4.      **Plaintiff *TWILA CARSTENS,*** is a single woman who has resided, at all times relevant hereto, in Colorado City, Arizona.

2

5.      **Defendant TOWN OF COLORADO CITY** ("CC") is a municipality in the State of Arizona.

6.      **Defendant CITY OF HILDALE** ("Hildale") is a municipality in the State of Utah.

7.      **Defendant KENNETH BRENDEL** is, and was at all times relevant hereto, the duly appointed city attorney for the Town of Colorado City. He is sued in his official capacity. In his capacity as city attorney for Colorado City, he has advised, during relevant times at issue the CCMO and other agencies of Colorado City on legal procedures for dealing with vandalism, trespass, evictions and a wide variety of appropriate and inappropriate responses of Colorado City and the CCMO to claims of vandalism, property destruction, trespass and other legal issues.

8.      **Defendant HYUM ROUNDY** was, at all relevant times hereto, an employee, acting as a law enforcement officer for CC and Hildale.

9.      **Defendant CORPORATION OF THE PRESIDING BISHOP OF THE FUNDAMENTALIST CHURCH OF LATTER DAY SAINTS ("Bishop")** is a Utah corporation.

10.     In each of the actions alleged hereunder, defendants acted under color of state law but for defendant Bishop which, through its words and deeds, engaged as a third party in a conspiracy with those acting under color of state law to cause plaintiffs harm.

11.     At all relevant times hereto, CC and Hildale was under the direct control of the FLDS church.

12.     Each defendant qualifies as a "person" pursuant to 28 U.S.C.

13.     At all relevant times, the defendants and each of them, knew that the plaintiffs were not of the FLDS faith.

FACTS

**A.     The UEP Trust**

14.     The United Effort Plan Trust (UEP) is a charitable and religious trust under Utah state law. The Trust was founded upon the tenets of the FLDS faith, by which members are expected to "consecrate" their real and personal property to the Bishop. The Trust was established to hold and manage all such consecrated properties in the Town of Colorado City, Arizona and Hildale City, Utah.

15.     **Defendant CORPORATION OF THE PRESIDING BISHOP OF THE FUNDAMENTALIST CHURCH OF LATTER DAY SAINTS** is, and was at all times relevant hereto, a corporation registered under the laws of the State of Utah for the purpose of conducting business and furthering the goals of the FLDS. The registered agent of the corporation is Nephi S. Jeffs and the registered officer of the corporation is Warren Steed Jeffs, the self-appointed prophet of the FLDS church presently incarcerated in Texas.

16.     Pursuant to Orders of the Third Judicial District Court of Salt Lake County in case No. 053900848, dated May 27, 2005; May 31, 2005; June 6, 2005; June 16, 2005; June 22, 2005; September 2, 2005; and October 25, 2006, Bruce Wisan was appointed to serve as a special fiduciary of the Trust and to manage, lease or rent the property of the Trust as such action is deemed reasonable, prudent and/or necessary in the discretion of the Fiduciary. UEP, both before and after Wisan's appointment as special fiduciary, is, and has been, the largest land owner in Hildale and Colorado City.

17.     Prior to Wisan's appointment, all of the real property owned by UEP was controlled exclusively by the FLDS church under the direction and control of its Prophet, Warren Jeffs.

18.     Upon the orders of the Third Judicial District Court appointing Bruce Wisan as the Special Fiduciary of UEP, FLDS control of the UEP properties in Colorado City and Hildale reverted to control by the Utah courts.

19.     Since the UEP Trust was put under the control and direction of the Court with its appointment of the special fiduciary, Colorado City and Hildale, in concert with the FLDS church, has actively conspired to discriminate against residents and businesses within the Cities in a variety of contexts in order to drive non-FLDS adherents out of the Cities.

20.     Both through the statements of the prophet, Warren Jeffs, and the practices adopted by the Cities, these defendants have actively discriminated in favor of members of the FLDS church and against non-FLDS persons and businesses which have requested but not been given equal treatment under the law.

21.     In this connection, the defendants have regularly, in the course of conducting the businesses of the Cities, acted in violation of the constitutional rights of non-FLDS adherents by depriving such residences and businesses of essential city services, conducting illegal arrests, and refusing to investigate crimes committed by FLDS adherents against the UEP Trust, residents of the Cities, and commercial businesses owned or leased from the Trust by non-FLDS adherents.

22.     In various court actions in federal court, juries and judges have assessed damages and various injunctions against Colorado City and Hildale, forbidding them from various forms

of discrimination against non-FLDS persons in the future. Millions of dollars have been assessed against the Cities for their active discrimination in various forms ever since the Trust has been taken over by the Third District Court and its appointed special fiduciary, Bruce Wisan.

23.     Since the orders of the Third Judicial District Court aforementioned, the FLDS church, the Cities, the marshal's office and the named individual defendants in this case have conspired to discriminate against non-believers of FLDS by denying them essential city services, harassing and intimidating them in the conduct of city affairs, and in illegally arresting and prosecuting those residents who are not of the FLDS faith.

24.     As a principal instrument of religious control, FLDS has, and continues to, dictate policies of the Cities of the Town of Colorado City and Hildale City. Virtually all of the administrative offices of both cities, including the mayors, city managers, town councils, and the marshal's office of the Cities are chosen and handpicked by the Prophet Warren Jeffs and the FLDS church.

25.     In so discriminating, the church has conspired with city officials to illegally arrest and prosecute non-members of the FLDS faith, while at the same time turning a blind eye to open and notorious violations of the law, including trespass, vandalism and illegal marriages by FLDS members.

26.     By their words and actions, the defendants, and each of them, have willfully and maliciously ignored violations of the law by FLDS members against UEP and non-members.

**B.     The events of December 23, 2015**

6

27.   On December 23, 2015, approximately mid-morning, the Plaintiffs, duly authorized representatives of the United Effort Plan Trust, arrived at 760 N. Hildale Street, Hildale, Utah for the purpose of changing the locks on the property, securing the property and inspecting it for use by UEP and qualified UEP beneficiaries in the future.

28.   The property was, and still is, owned by the United Effort Plan Trust.

29.   The Plaintiffs arrived there with their locksmith and a video recorder.

30.   Prior to their arrival, the Washington County Sheriff's office had already served an actual eviction order on the property several weeks earlier.

31.   When Plaintiffs arrived, the trailer was vacant, cleared out of all personal effects, and there was no one on the property.

32.   Shortly after Plaintiffs' arrival, a woman came on the property, told Plaintiffs that the trailer home was completely empty and asked for permission of plaintiff Wyler to get a pile of yard tools which had been gathered up and were in a pile to the rear of the house.

33.   Plaintiff Wyler, after walking around to the back with her, gave permission for items of personal property to be removed.

34.   Shortly thereafter, defendant Hyrum Roundy appeared on the property and accused Mr. Wyler of trespassing.

35.   Wyler asked Roundy who had made a complaint of trespassing to him, but Roundy would not respond. Despite several requests by Wyler at the residence to Roundy, Roundy soundly refused to say who had called him.

36.   Shortly after Roundy arrived, a woman arrived at the property and identified herself as Verna.

37.     Verna identified herself to the persons present as the last person who had lived in the property as well as the person who had authorized the trespassing call.

38.     At all relevant times hereto, Verna was a mere squatter, with no legal right to be on the property.

39.     Plaintiff Wyler stepped towards the woman with the completed eviction paperwork, identified himself and told the woman that he worked for the United Effort Plan Trust. He told the woman he had orders from the court for her.

40.     During his conversation with the woman known as Verna, plaintiff Wyler was repeatedly interfered with by Officer Roundy who was deliberately attempting to keep the two from communicating.

41.      As plaintiff Wyler offered Verna the papers, Officer Roundy immediately arrested plaintiff Wyler.

42.     Based on numerous past experiences with plaintiff Wyler, Officer Roundy knew that Wyler had significant physical problems which Roundy exploited in making the arrest.

43.     Instead of commanding Wyler to put his hands behind his back so he could be handcuffed and informing Wyler that he was under arrest, Roundy grabbed plaintiff's arm and twisted it behind him and then grabbed his other arm jerking it behind Wyler in order to handcuff him, causing significant pain to Wyler.

44.     At no point during the discussions on the property did Verna request that either plaintiff leave the property. Verna had already responded to the eviction orders posted by Washington County Sheriff's office, had cleaned out the home and 99 per cent of the yard.

45.     At all relevant times on December 23, Twila Carstens was acting as a videographer on behalf of the United Effort Plan Trust. Up until these events, she was videotaping the interchanges between the parties at the scene.

46.     After the arrest of Wyler, Officer Roundy proceeded to arrest Twila Carstens.

47.     At the time Roundy sought to handcuff Carstens, she was using her hands to operate a video camera, memorializing the events at the scene.

48.     Rather than asking her to put down the video camera and put her hands behind her back, Roundy maliciously grabbed her arm and twisted it behind her, causing her to juggle the video camera with her other hand and chin.

49.     Then, while plaintiff Carstens was attempting to juggle the camera with her remaining hand and chin, Roundy maliciously grabbed her other arm and twisted her hand and arm behind her, causing her eventually to drop the camera.

50.     During the encounter between Plaintiffs and Roundy, Plaintiffs called for Washington County Sheriff's office response, on the grounds that the marshal's office was acting illegally in accusing Plaintiffs of illegally accessing the property.

51.     In an effort to ensure that Washington County Sheriff's officers would not arrive on the scene and intercede, Roundy illegally transported Carstens and Wyler across state lines to Arizona.

52.     Roundy illegally transported Plaintiffs to the Hildale/Colorado City Marshal's office in Colorado City, Arizona, where he illegally held them without probable cause, without giving them the right to seek an attorney, and for the malicious purposes of harassing and

intimidating them because of their status as non-believers, apostates, and employees of the United Effort Plan Trust.

### C.   Other events.

53.    The events of December 23, 2015, are part of a larger practice of the FLDS church to conspire with and use personnel of the city, including defendant Kenneth Brendel, attorney for the city, to discriminate against non-FLDS members, harass and intimidate them, arrest them without probable cause, all in an attempt to drive them from the city.

54.    Simultaneously, the defendants FLDS church, Brendel, Roundy and Colorado City and Hildale have sought to promote the religious values of the FLDS church, illegal in Arizona and Utah, by failing to prosecute members of the religion for consistent and repeated violations of the criminal law of each state, including trespassing, theft, illegal marriages, and bigamy.

55.    Since December 23, 2015, the Defendants have accelerated their harassment and intimidation of plaintiffs in a number of subsequent encounters between Defendants and the Plaintiffs.

After finally releasing Plaintiffs, defendant Roundy referred Plaintiffs for prosecution.

### D.   Events of December 31, 2015.

56.    On December 31, 2015, plaintiff Isaac Wyler reported a possible theft from a UEP owned property upon which there was no legal resident.

57.    Officer Roundy deliberately and inadequately investigated the report of Isaac Wyler and then, unknown to Wyler at the time, referred a case for prosecution against Wyler for Providing False Information to a Police Officer.

58.     Wyler provided no false information to a police officer, and the referral was made by Roundy without probable cause.

59.     Although no charges were ever brought against Wyler, the incident, and the referral for prosecution against Wyler, remain on his permanent criminal record.

**E.      The events of January 15, 2016.**

60.     On January 15, 2016, while plaintiff Wyler was posting a UEP tax notice on a UEP owned home, a woman named Donna Steed called the marshal's office to report Isaac Wyler as trespassing.

61.     At the time of her complaint, Donna Steed had no legal interest whatsoever on the property at 965 W. Harker Avenue, Colorado City, Arizona.

62.     Plaintiff Wyler was then referred by Defendants for prosecution.

**F.      The events of February 18, 2016.**

63.     On February 18, 2016, plaintiff Isaac Wyler called in a report of vandalism of a tire of his vehicle to the Hildale/Colorado City Marshal's office.

64.     Without probable cause, in an attempt to further harass and intimidate plaintiff Wyler, defendant Hyrum Roundy logged the report and referred it on as a charge against Wyler for False Reporting to Law Enforcement Agency.

**G.      The events of February 19, 2016.**

65.     On February 19, 2016, plaintiff Isaac Wyler reported to the Hildale/Colorado City Marshal's office a theft from United Effort Plan Trust property.

66.     Defendant Hyrum Roundy responded.

11

67.     Instead of properly investigating the claim as theft, defendant Roundy characterized the police report as one against plaintiff Wyler for False Reporting to Law Enforcement.

68.     Roundy's referral and police report was without probable cause, and a further attempt to harass and intimidate Isaac Wyler in the performance of his official duties.

**H.     The events of April 4, 2016.**

69.     On April 4, 2016, Isaac Wyler reported a theft from a UEP property at 455 N. Central Street, Colorado City, Arizona.

70.     Hyrum Roundy responded.

71.     Instead of doing a proper investigation of the claims of plaintiff Wyler, Roundy characterized the events and made a referral against plaintiff Wyler for False Reporting to Law Enforcement.

72.     Officer Roundy's claims against Wyler were without probable cause and a further attempt to harass and intimidate plaintiff Wyler.

**I.     A further event of April 4, 2016.**

73.     Also on April 4, 2016, Wyler reported a theft of property from 145 N. Pioneer Street, Colorado City, Arizona.

74.     Defendant Hyrum Roundy responded.

75.     Roundy failed to properly investigate the claim of theft, instead referring a charge against Plaintiff Wyler for False Reporting to a Law Enforcement Officer.

76.     Roundy's referral was without probable cause and a mere attempt to further harass and intimidate plaintiff Wyler.

12

**J.      The events in general.**

77.     In all of the actions taken against plaintiffs Wyler and Carstens, the Defendants, and each of them, sought to discriminate against Wyler and Carstens in their performance of their duties, and to discriminate against them, because they were not members of the FLDS faith.

78.     Each of the properties in question was owned by the UEP Trust. In each of these instances, Wyler and Carstens were duly appointed agents of the United Effort Plan Trust, which owned the properties.

<u>**CAUSES OF ACTION**</u>

COUNT I

<u>Constitutional and Civil Rights pursuant to 42 U.S.C. §§1983, 1985</u>

<u>Violation of Constitutional Rights pursuant to First Amendment, Fourth Amendment,</u>

<u>Fourteenth Amendment</u>

79.     Allegations contained in preceding paragraphs are incorporated by reference.

80.     The arrests, incarcerations, and further actions against Plaintiffs specified above violated plaintiff's Fourth Amendment protections against unreasonable searches and seizures to the Plaintiffs and the due process of the Fourteenth Amendment.

81.     Additionally, the actions of the Defendants aforementioned willfully and deliberately discriminated against the Plaintiffs in violation of their First Amendment rights to freedom of religion and the due process clause of the Fourteenth Amendment.

82.     As a direct and proximate result of the Defendants violations of Plaintiff's constitutional rights, the Plaintiffs have suffered severe and substantial damages. These damages include physical and emotional distress, defamation of Plaintiff's reputations.

## COUNT II

### Conspiracy pursuant to 28 U.S.C. §§1983 and 1985

83.     Allegations contained in preceding paragraphs are incorporated by reference.

84.     As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, the Plaintiffs have suffered severe and substantial damages. These damages include physical and emotional distress, defamation of Plaintiff's reputations.

**Prayer for relief.**

WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

(1)     For appropriate compensatory damages in an amount to be determined at trial;

(2)     For punitive damages against Bishop for malicious conduct;

(3)     For appropriate equitable relief against all defendants as allowed by the Civil Rights Act of 1871, 42 U.S.C. §1983, including the enjoining and permanent restraining of these violations and direction to the defendants to take such affirmative action as is necessary to ensure that the effects of unconstitutional and unlawful practices described herein are eliminated and do not continue to affect plaintiffs or others;

(4)     For an award of reasonable attorney's fees and costs expended by these Plaintiffs in this litigation pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1988; and

(5)     For such other and further relief as the Court deems reasonable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 22nd day of December, 2016

WILLIAM G. WALKER, P.C.

/s/ William G. Walker
Attorney for Plaintiffs

LEIGH BERNSTEIN, ESQ.

Co-counsel for Plaintiffs

15