**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marvin Isaac Wyler, Jr. and Twila Carstens, Plaintiffs, v. Corporation of the Presiding Bishop of the Fundamentalist Church of Latter Day Saints, Defendant. | No. CV-16-08299-PCT-DJH **ORDER** |

Pending before the Court is Plaintiffs' Fourth Motion for Default Judgment (Doc. 48). Prior to that filing, Plaintiffs requested a hearing "to determine the amount of damages pursuant to Rule 55((2)(b)" (sic). (Doc. 45). The Court held a hearing to do so on February 1, 2019. In advance thereof, the Court ordered Plaintiffs to "file supplemental briefing fully analyzing the factors for default judgment, including the *specific amount of damages sought* and the authority allowing such damages[.]" among other directives. (Doc. 49)(emphasis added). Plaintiffs filed a supplemental brief purporting to do so. (Doc. 50).

A hearing was held on February 1, 2019. There, the Court noted that Plaintiffs' supporting exhibits included incidents that fall outside of their complaint in substance and dates. (Doc 54 at 20-21). Additionally, as the complaint alleges a conspiracy, the Court questioned how to determine damages for Defendant Bishop vis-a-vis the co-conspirator dismissed parties, particularly Defendants Roundy and Brendel. (*Id*. at 9). At the conclusion of the hearing, the Court gave Plaintiffs another opportunity to supplement their

briefing on particularized damages. (*Id*. at 19). On March 7, Plaintiffs provided that supplemental information (Doc. 57) and the Court now issues its ruling.

## I. Background and Procedural History

Plaintiffs filed a complaint against Defendants on December 1, 2016 (Doc. 1). Plaintiffs alleged constitutional and civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1985 and conspiracy pursuant to 28 U.S.C. §§ 1983 and 1985. Plaintiffs allegations stem from acts taken against them by individuals acting in their official capacities, at the direction of Warren Jeffs, because they are not FLDS members. (*Id.*). Specifically, Plaintiffs allege that remaining Defendant, Corporation of the Presiding Bishop of the Fundamentalist Church of Latter Day Saints ["Bishop"] is a Utah corporation and that co-defendants Town of Colorado City, Arizona ["CC"] and City of Hildale, Utah ["Hildale"] operated under the direction of the Bishop and the FLDS church. (*Id*. at ¶ 9 - 11). Co-defendant Kenneth Brendel is the appointed CC city attorney and co-defendant Roundy ["Roundy"] is a "law enforcement officer for CC and Hildale." (*Id*. at ¶¶ 7-8).

Plaintiffs allege that the defendant Bishop corporation is registered under the laws of Utah and formed to further FLDS goals. (*Id*. at ¶ 15). The corporation's registered owner is Nephi S. Jeffs, and the registered officer is Warren Steed Jeffs "the self-appointed prophet of the FLDS church presently incarcerated in Texas." (*Id*.). The complaint further alleges that the United Effort Plan Trust ["UEP"] is a charitable and religious trust formed under Utah law, and formed upon the tenets of the FLDS faith. (*Id*. at ¶ 14). The FLDS faith requires its members to "consecrate" their real and personal property to the Bishop and the UEP holds and manages those properties in CC and Hildale. (*Id*.). As a result of litigation in Utah from 2005-2006, the UEP was placed under a court appointed special fiduciary. (*Id*. at ¶ 16-19). Since then, the FLDS, CC, and Hildale have, through the Bishop, "actively conspired to discriminate against [non-FLDS member] residents and businesses within the Cities" by "depriving such residences and businesses of essential city services, conducting illegal arrests and refusing to investigate crimes committed by FLDS adherents against the UEP, residents of the Cities and commercial business owned or leased

from the [UEP] by non-FLDS adherents." (*Id*. ¶¶ 20-21).

The complaint alleges that Plaintiff Marvin Isaac Wyler, Jr. ["Wyler"] is an authorized representative of the UEP and his responsibilities include "changing locks . . . on the property, securing the property and inspecting it for use by UEP and qualified UEP beneficiaries[.]" (*Id*. at ¶ 27). Wyler alleges that on December 23, 2015, while serving the prior property owner with court ordered eviction documents on non-UEP trust property in Hildale, Roundy appeared and immediately arrested him. (*Id*. at ¶ 41). Wyler states that based on prior interactions with Roundy, he was aware of Wyler's "significant physical problems" which he exploited in making the arrests – Roundy "grabbed plaintiff's arm and twisted it behind him and then grabbed his other arm jerking it behind Wyler in order to handcuff him, causing significant pain to Wyler." (*Id.* at ¶ 43).

Plaintiff Twila Carsten's ["Carstens"] allegations stem from her accompanying Wyler on December 23 as the UEP videographer. (*Id*. at ¶ 9). After Roundy arrested Wyler, he arrested Carstens as she taped the incident. In so doing, Roundy grabbed her arms, twisted them behind her back causing her to drop the camera. (*Id*.). Plaintiffs attempted to contact the Washington County Sheriff's office but before the office could, Roundy transported then across state lines to Hildale/Colorado City Marshal's office in CC where he held them without probable cause and in violation of their *Miranda* rights. (*Id.* at ¶ 50-52).

Plaintiff Wyler alleges numerous other incidents including on December 31, 2015 when he reported a possible theft from a UEP property and Roundy "deliberately and inadequately investigated the report" and instead referred Wyler for prosecution for providing false information to a police officer. Although no charges were brought, the prosecution referral remains on Wyler's permanent record. (*Id*. at ¶ 56-57). On January 15, 2016, while posting a UEP tax notice, an uninterested party "Donna Steed" of CC called to report Wyler as a trespasser and he was subsequently referred for prosecution. (*Id*. at ¶ 60-62). On February 18, 2016, Wyler called the Hildale/Colorado City Marshal's Office to report vandalism of his vehicle. Roundy logged the report as a charge against Wyler for

false reporting to a law enforcement agency. (*Id*. at ¶ 63-64). On February 19, 2016, Wyler reported a theft from UEP property to the "Hildale/Colorado City Marshal's Office," Roundy responded and again logged the claim as a false report to law enforcement by Wyler. (*Id*. at ¶ 65-68). On April 4, 2016, Wyler reported a theft from UEP property in CC. Roundy again responded and without further investigation again reported Wyler for making a false report to law enforcement. That same day, Wyler alleges virtually identical complaints relating to a different UEP property in CC. Roundy again responded and reported the matter as Wyler falsely reporting to law enforcement agency. (*Id*. at ¶ 73-76).

Plaintiffs sought relief in the form of unspecified compensatory damages and "punitive damages against Bishop for malicious conduct." (Doc. 1, at 14). Plaintiffs further seek equitable relief (including enjoining and permanent restraining of violations and unlawful practices) and an award of reasonable attorney fees. (*Id*.). An entry of default was entered against Defendant Bishop on May 30, 2017 pursuant to Fed.R.Civ.P. 55(a). The parties entered into a stipulation dismissing all other remaining parties. (Doc. 41). The Court entered an Order dismissing the complaint as to those parties. (Doc. 42). At the February 1 hearing, Plaintiffs state they entered into a confidential monetary settlement with each of these co-conspirator parties. Plaintiffs now seeks Default Judgment against Defendant Bishop pursuant to Fed.R.Civ.P. 55(b). (Doc.48).

**II.    Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. Default judgment is available as long as the plaintiff establishes (1) the defendant has been served with the summons and complaint, and default was entered for their failure to appear; (2) the defendant is represented if a minor or incompetent person; (3) the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if the defendant has appeared in the action, that the defendant was provided with notice of the application for default judgment at least seven days before a default hearing. Fed.R.Civ.P. 55; *Twentieth Century Fox Film Corp. v. Streeter,* 438 F.Supp.2d 1065, 1070 (D. Ariz. 2006).

Entry of default judgment is within the trial court's discretion. *HTS, Inc. v. Boley,* 954 F.Supp.2d 927, 940 (D. Ariz. 2013) (citing *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980)). "When deciding whether to grant default judgment, the court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and, (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *ld.* (citing *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986).

Upon entry of default, the factual allegations in the plaintiff's complaint, except those relating to damages, are deemed admitted. *ld.* (citing *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 1987)). But entry of default judgment is not a matter of right. *Warner Bros. Entm't Inc. v. Caridi*, 346 F.Supp.2d 1068, 1071 (C.D.Cal. 2004). Indeed, while a court is to accept as true the well pleaded factual allegations, the same is not true for allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 987). Plaintiff must prove all damages sought in the complaint. *Philip Morris USA Inc., v. Castworld Productions, Inc*., 219 F.R.D. 494, 498, (C.D.Cal. 2003), Fed.R.Civ.P.55(b)(2)("In determining damages, a court can rely on the declarations submitted by the plaintiff.").

### III. Analysis

#### 1. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Although Plaintiff's Motion does not address jurisdiction, this Court must determine whether it has subject matter jurisdiction and personal jurisdiction over the defaulting Defendant. *See id.*

Here, this action is brought pursuant to a federal civil rights statute and thus the Court is satisfied it has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("The

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Regarding personal jurisdiction, again, Plaintiffs have the burden to show that this Court has personal jurisdiction over all parties, including Defendant Bishop. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Where, as here, the personal jurisdiction issue is being decided "based on written materials rather than an evidentiary hearing, the plaintiff[s] need only make a *prima facie* showing of jurisdictional facts." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800). "The plaintiff cannot 'simply rest on the bare allegations of its complaint[,]' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photon, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Schwarzenegger,* 374 F.3d at 899) (other citation omitted)).

Plaintiffs' remaining claims involve the Bishop conspiring with individuals acting in their official capacities to violate their rights because they are estranged from the FLDS or not otherwise FLDS. The complaint sufficiently links the Bishop's reach into both Utah and Arizona because Roundy was an employee police officer for both CC and Hildale. He was able to respond to incidents and affect arrests in both Arizona and Utah. Under these facts, Plaintiffs have sufficiently alleged minimum contacts to achieve personal jurisdiction. *See Washington Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668 at 673 (9th Cir. 2012).

## 2. Allegations in the Complaint

Plaintiffs' complaint alleges Fourteenth ("protections against unreasonable searches and seizures and due process") and First Amendment ("freedom of religion") rights violations. (Doc. 1 at 13 ¶¶ 79-82). These claims arise from, among others, the incidents that occurred on December 23, 2015, December 31, 2015, January 15, 2016, February 18, 2016, and February 19, 2016. The complaint, however, does not specify the specific section that their claimed 1985 conspiracy arises under, section (2) or (3), thus the Court must determine whether they have stated a proper claim. *See Bretz v. Kelman*, 773 F.2d

1026 (9th Cir. 1985). Both Plaintiffs have alleged sufficient facts that their civil rights were violated due to their non-FLDS affiliation and because they were carrying out their duties under the UEP. The acts included intimidation, harassment, unlawful restraint and arrests, and threats of prosecution. Plaintiffs also have sufficiently alleged that the defendants conspired to deprive them of equal protection, and privileges and immunities based on a well-known animus toward non-FLDS individuals and entities. Moreover, Plaintiffs have established the requisite link between the named co-conspirators who carried out the Bishops directives to do so. (*Id*. at 6 ¶ 24 and 25) *see also* (Doc. 57-4 ¶ 14)(district court findings in *United States v. Town of Colorado City, Arizona et al.*,)[1]. The complaint sufficiently alleges that Defendant Bishop is liable for conspiracy with the dismissed defendants to engage in religious discrimination and thus deprived Plaintiffs of their constitutional rights pursuant to 28 U.S.C. section 1983 and 1985(3).

Plaintiffs seek default judgment against the Bishop stating broadly that they attempted to serve Defendant "Bishop,"[2] its statutory agent at the statutory address, and service was eventually affected by alternative means. (Doc. 50 at 2). Yet, Defendant Bishop has yet to enter an appearance or answer. Plaintiffs further state that there are no remaining defendants in the case. (*Id*.) And the well-pleaded allegations sufficiently alleged the Bishop is liable for conspiracy to deprive each Plaintiff of their constitutional rights by engaging in religious discrimination in violation of 28 U.S.C. 1983 and 1985. The Court will turn to the *Eitel* factors.

### 3. *Eitel* Factors Analysis

Applying the first *Eitel* factor, the Court finds it favors Plaintiffs. Plaintiffs filed the complaint on December 22, 2016 and Defendants have yet to answer or appear. Plaintiffs will surely "suffer prejudice if the default judgment is not entered because

---

[1] "By 2007, the FLDS Church security had expanded to several hundred members, some of whom were CCMO officers, and organized into teams assigned to shift s and captains . . . [c]hurch officials, with direct assistance from CCMO officers, were able to monitor attendance at meetings and monitor comings and goings within the community."

[2] The Court notes ' motion refers to the remaining defendant as "Defendant FLDS" (Doc. 50 at 2:2). The Court will continue to refer to Defendant as "Defendant Bishop" or "Bishop" as Plaintiffs do in their complaint.

Plaintiff[s] would be without other recourse for recovery." *See Philip Morris USA, Incv. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.Cal. 2003). Plaintiffs would suffer prejudice.

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010). The Court will proceed in this way. The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal 2002). "However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning*, 572 F.2d at 1388. The merits of the substantive claims are sufficiently serious as discussed above and are supported by Plaintiffs affidavits. (Doc.50-1 and 2). It alleges, a conspiracy pursuant to sections 1983 and 1985 between all defendants (including cities, municipalities and individuals) and Defendant "Bishop" to discriminate against non-FLDS members including Plaintiffs. Plaintiff Wyler avows that he and his family are FLDS, however, they were relieved of their membership by Warren Jeffs. (Doc. 1 at 2). He further claims that after being removed from the FLDS, he experienced numerous instances of intimidation, threats harassment, false claims and at least one false arrest by Roundy. (*Id*. 2-3). Most of these acts occurred while in the performance of his UEP duties. (*Id.*). Further, Plaintiffs' counsel's paralegal, Lauren McKeen states running a "word search" with dismissed defendant Roundy's name yielded 15 instances of contact with Plaintiff Wyler in 2016 resulting in "[f]alse [r]eporting" or "[t]respassing." (Doc 57-2). As for Plaintiff Carstens, she avows witnessing some of the acts alleged by Wyler, when he attempted to report crimes, but was cited for false reporting to law enforcement. (Doc. 50-2). She further avows being arrested, taken across state lines and held for three hours without receiving her *Miranda* rights. (*Id*. at 2). She further claims that during the arrest, her arm was twisted resulting in six months of pain. (*Id*.). Taking Plaintiffs' fact

allegations as true, the Court finds the complaint pleads enough facts and states a plausible claim for relief under 42 U.S.C. §§ 1983 & 1985 and 28 U.S.C §§ 1983 & 1985 Conspiracy.

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc.*, 238 F.Supp.2d at 1176. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Twentieth Century Fox Film Corp. v. Streeter*, 438 F.Supp.2d 1065, 1071 (D. Ariz. 2006); S*ee Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1012 (C.D. Cal. 2014) ("Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct."). Here, Plaintiffs motion summarily states "[t]he amount at stake . . . is commensurate with the injuries." Plaintiffs complaint seek compensatory damages and "punitive damages against Bishop for malicious conduct" but it does not allege a sum certain. (Doc 1 at 14). Plaintiffs have settled all other claims against all other co-conspirator defendants for undisclosed amounts. And, as will be discussed, Plaintiffs have yet to specify the actual amount of damages associated with their claimed physical and emotional distress. Thus, at this juncture, this factor tips in favor of Defendant.

The fifth factor, the possibility of a dispute concerning material facts weighs in Plaintiffs' favor because Plaintiffs have alleged enough facts alleging conspiracy – an agreement among all defendants to discriminate against non-FLDS individuals. Notably, other courts have found similar instances of conduct. (Doc. 57- 4 and 5). And as stated by Plaintiffs, Defendant Bishop has yet to respond and thus there is little likelihood of a dispute about material facts. This factor weighs in favor of Plaintiffs.

The sixth factor also weights in favor of Plaintiffs. The record shows no excusable neglect. Indeed, after several attempts to serve Defendant Bishop with the complaint, Plaintiffs' filed an *Ex Parte* Motion to permit alternative Means of Service (Doc. 13) which this Court granted (Doc. 15). "Given these circumstances, it is unlikely that [the Defendants'] failure to answer and the resulting default was a result of excusable neglect." *See Streeter*, 438 F.Supp.2d at 1072 (citing *Cf. Shanghai Automation Instrument Co., Ltd.*

*v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (concluding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion")). Simply put, alternative service has been issued and Defendant Bishop has failed to answer or otherwise contest any claim alleged.

Regarding the seventh factor, "[T]he Federal Rules espouse a preference for resolving cases on their merits [.]" *Dr. JKL Ltd.*, 749 F.Supp.2d at 1051 (citing *Eitel*, 782 F.2d at 1472). Here, Defendants' "failure to comply with the judicial process makes a decision on the merits likely impossible." *See id.* Thus, while the Court recognizes the preference for resolving cases on the merits, this factor weighs in favor of entering default judgment.

The majority of the *Eitel* factor weight in favor of Plaintiffs. Thus, the Court will enter default judgment accordingly. However, given the lack of damages evidence, the Court cannot enter an award of damages to either Plaintiff as discussed below.

### 4. Damages

"In granting default judgment, a court can award only up to the amount prayed for by a plaintiff in the complaint." *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173 at*13 (N.D. Cal 2007). Under Fed.R.Civ.P. 8(a)(3), a demand for relief must be specific. In other words, plaintiff must "prove up" the amount of damages he or she claims when seeking default judgment. *See Castworld Products*, 219 F.R.D. at 501.

At the outset, the Court notes that Plaintiffs' supplemental briefing is again unresponsive to the Court's inquiry on their specific damages. During the hearing, the Court explained that Plaintiffs' supporting documents amounted to a document dump requiring it to mine for their supporting evidence. In so doing, the Court found irrelevant and unresponsive information as to their claimed damages. (Doc. 54 at 20). Plaintiffs' third supplement fares no better. Nowhere in Plaintiffs' documents do they request a sum certain for their alleged physical and emotional distress or their claimed defamation of reputation.

Plaintiffs' counsel likened the Court's inquiry to the district court in *Prairie Farms*

- 10 -

*LLC., v. Town of Colorado City, et al.*, CV-16-08232-PCT-DLR.[3] Plaintiffs' counsel overlooks that in *Prairie Farms* he sought a sum certain for each Plaintiff. ("[t]he inability of Prairie Farms to conduct business on the property for approximately a year is estimated to have cost Prairie Farms in excess of $500,000.)(Doc. 115 at 3). Here, Plaintiffs failed to do so. Instead, when given another opportunity to provide their damages request, Plaintiffs again filed multiple pages of documents, none specifying the damage amounts sought.

For example, counsel submitted an affidavit explaining that he has litigated against Defendant FLDS Church since 2002 and inferring that this Court is obligated to enter default judgment and award damages against this Defendant because other courts have done so. (Doc. 57). Plaintiffs overlook the obvious – the parties and factual claims here, specifically those relating to damages, are not the same as those in *Ronald Cooke, et al, v Town of Colorado* or *United States of America v. Town of Colorado City, Arizona et.al*. Plaintiffs provide no supplemental information tying the "*well plead*" factual allegations to any damage amount. Plaintiffs have not met the standard of proof entitling them to an award of damages at this juncture. Therefore, the Court is unable to fashion an award of damages. Accordingly,

**IT IS ORDERED** granting in part Plaintiffs' Fourth Motion for Default Judgment as to The Corporation of the Presiding Bishop of the Fundamentalist Church of Jesus Christ of Latter Day Saints (Doc. 48). The Court grants the motion pursuant to Fed.R.Civ.P. 55(b)(2) and orders that default judgment be entered.

**IT IS FURTHER ORDERED** denying without prejudice Plaintiffs' request for an award of damages (*Id*.).

Dated this 12th day of March, 2019.

Honorable Diane J. Humetewa
United States District Judge

---

[3] In that case, the same two causes of action are alleged, count one for section 1983 and 1985 violations and count two for conspiracy. (Doc. 1)(16-CV-08232-DLR)).

- 11 -